UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

GAIL FRYDKOWSKI,

                Plaintiff,        Docket No.: 06-CV-13357 (RMB)

    -against-                 COMPLAINT

JEPPESEN-SANDERSON CO., a wholly
owned subsidiary of the BOEING CO.      JURY TRIAL DEMANDED

                                        ECF CASE
                Defendant.

-----------------------------------------------------------x

## JURISDICTION

1. Jurisdiction is conferred on this court by 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 1981. In addition, there are causes of action under New York law which this court has jurisdiction under the court's pendent and supplemental jurisdiction under 28 U.S.C. §1367. All administrative prerequisites have been been satisfied, the Plaintiff received a Right to Sue Letter on September 5, 2006 and this complaint is being filed within 90 days of receipt of said Right to Sue letter.

## PARTIES

2. Plaintiff is a woman and resides at 310 First Avenue, New York, NY 10009.

3. Defendant, JEPPESEN SANDERSON Company (Hereinafter "Jeppesen") is a wholly owned subsidiary of the BOEING Corporation. JEPPESEN Co, has a principal place of business at 444 Park Avenue South, New York, New York 10016. Boeing Corporation has a principal place of business at 17930 Pacific Highway South, Seattle Washington 98124.                                        .

4. Antonio Wing is an individual who was employed by Jeppesen Co. During the relevant times stated in this complaint. Mr. Wing worked at all relevant times as a Project Manager, and Ms. Frydkowski's supervisor.

## FACTS

5. Ms. Frydkowski was originally hired by Jeppesen Co.'s predecessor corporation SBS International Inc. on September 26, 1995, as a Director of Customer Service. On December 21, 2003, Ms. Frydkowski was promoted to Customer service Specialist Level2. On August 15, 2004 Ms. Frydkowski was accepted a position as Level 3 Systems Engineer. On December 5, 2004 Ms. Frydkowski was promoted to Associate Project Manager Level 2.

6. During Ms. Frydkowski's entire period of employment with SBS and Jeppesen always received good to excellent reviews. In addition, at all times Ms. Frydkowski was involved with the computerized Crew and Staff Planning and

Management Systems. She received many compliments from her clientele for her good work.

    7. In March 2005, Ms. Frydkowski was given her yearly evaluation which was very good and Ms. Frydkowski received a $3,000 raise.

    8. In or about April 2004, Ms. Frydkowski applied to Project Management Institute (hereinafter "PMI certification") in regards to applying for and earning the Professional Management Professional Certification. The defendant at a minimum strongly urged all Associate Project Managers to apply for and obtain said certification.

    9. In or about April 2005, Ms. Frydkowski applied for the PMI certification because Jeppesen made it clear that all project managers were encouraged to obtain said certification as part of their employment as a  project manager .

    10.At all times Jeppesen Co, paid for Ms. Frydkowski's tuition at the New York University Professional Management Institute.

    11. After Ms. Frydkowski submitted her application, and after she had been approved for her certification, the Project Management Institute selected her application for a wholly random audit which was part of their certification process.

12. As part of the random audit, the Project Management Institute required that Ms. Frydkowski have her supervisor or various other individuals sign her application attesting to the work she has performed.

13. In or about April 2005, Ms. Frydkowski requested that Mr. Wing sign her application for the PMI certification.

14. Upon information and belief although the certification was not required for Ms. Frydkowski to continue in her position as a Project Manager, it had been made clear to ms. Frydkowski that she should obtain said certification, as many project managers had in other offices of the defendant across the country.

.

15. In or about April 2005, Antonio Wing told Ms. Frydkowski that he would not sign the application. Mr. Wing gave no reason for his stark refusal to sign the audit. In addition, Mr. Wing had no legitimate reason for his refusal to sign said application, and, upon information and belief, he would not have refused similarly situated male project managers.

.

16. Upon information and belief, at the time Mr. Wing refused to sign Ms. Frydkowski's application he did not have the PMI certification.

17. Upon information and belief Mr. Wing had absolutely no reason for his refusal to sign said application since it simply attested to work for which Mr. Wing

4

had either assigned or knew Ms. Frydkowski had done.

18. In or about May 15, 2005, Ms. Frydkowki received the PMI certification. Upon information and belief, Ms. Frydkowski was the first woman in the Jeppesen New York office that received the PMI certification.

19. Upon information and belief, the PMI certification could have lead to a promotion for Ms. Frydkowski, potentially a higher salary and a higher level position than Mr. Wing.

20. In or about June 2005, after Mr. Wing refused to sign Ms. Frydkowki's application, Ms. Frydkowski went to Jeppesen's Human Resources Department and filed a complaint in which Ms. Frydkowski alleged, among other things, that she was being discriminated against based on her gender.

21. In or about June 2005, Ms. Frydkowski again complained about discrimination and harassment by Mr Wing. Ms. Frydkowski complained to Ms. Debbie Semel of Jeppesen's Human Resources Department and Armen Karapetian, the New York Site Leader for Jeppesen Co., regarding both discrimination and retaliation which she had been subjected, and upon information and belief Semel and Karapetian discussed the issues of discrimination and retaliation with Antonio Wing.

22.  In or about June to September 2005, Antonio Wing began an unrelenting campaign of harassment, discrimination and retaliation, to wit; on a regular and routine basis, Antonio Wing would yell, scream and treat Ms. Frydkowski in a hostile and belittling manner which he did not treat similarly situated men.

23. In or about June 2005,  Ms.  Frydkowski, after being subjected to intense discrimination, harassment and retaliation requested that Armen Karapetian, the New York Site Leader for Jeppesen to transfer her out of Antonio Wing's department, because she could not take the unrelenting abuse, harassment, discrimination and retaliation from Antonio Wing, and because said abuse was causing her psychological and physical pain and suffering.

24. In regards to Ms. Frydkowki's request to transfer, Ms. Frydkowski knew of other managers at Jeppesen who indicated that they would be happy to have Ms. Frydkowski in their department. Nevertheless, Jeppesen refused to transfer her out of Antonio Wing's department.

25. In or about September 2005, Ms. Frydkowski received an Employee Incident Report which falsely alleged that she was insubordinate and or dishonest. Said Employee Incident Report was retaliatory and in response to Ms. Frydkowki's protected speech in regards to being discriminated and retaliated against.

26. Upon information and belief Jeppesen Co. has a policy or practice of graduated discipline for alleged violations. In addition, Jeppesen has a strict policy and practice in regards to not retaliating against an employee for filing a charge of discrimination.

27. In or about, September 2005, Ms. Frydkowski was terminated in violation of the rules and regulations of Jeppesen Co., for absolutely no just cause and both in stark retaliation for her protected speech and discrinatorilly in that similarly situated men would not have been trerated in the manner that she was treated nor terminated for violation of said alleged violation..

28. Although Jeppesen Co., employee manual states that the company engages in progressive discipline including verbal warning, written warning and then notice of termination. These terms were not applied to Ms. Frydkowski although similarly situated men were given progressive discipline when they were found to have committed a similar violation.

29. Although Ms. Frydkowski was allegedly terminated for reasons stated in the Employee Incident Report, upon information and belief, similarly situated men who were charged with similar violations, or worse, were not terminated but given a much less severe punishment.

FIRST CAUSE OF ACTION

30. The acts and omissions of the Defendant Jeppesen Sanderson Co. in discriminating and retaliating against Ms. Frydkowski violated the plaintiff's rights under the Civil Rights Act of 1964 as amended by the 42 U.S.C. §2000-e et. seq., the New York State Executive Law §296 and the New York City Administrative Code §8-101 et. seq., and as a result the plaintiff has been severely damaged.

SECOND CAUSE OF ACTION

31. The plaintiff repeats and realleges paragraphs one (1) through twenty-nine (29) and restates them as paragraph thirty-one (31) herein.

34 The actions and omissions of the defendant Jeppesen violated the defendant Jeppesen Co. Violated 28 U.S.C. §1981 and as a resulted the plaintiff has been damaged.

WHEREFORE, plaintiff demands the following relief:

1. Back pay, and all attendant benefits;

2. Compensatory damages;

3. Punitive damages;

4. Injunctive relief, and/ or Front Pay;

5. Declaratory relief;

6. All Costs;

7. Jury Trial;

8. Attorney's fees;

9. Pre and Post Judgment Interest;

10. Any and all other relief this court deems just and proper.


Dated: New York, New York
November 15, 2006

/s/_____
Noah A. Kinigstein
Attorney for the Plaintiff- Frydkowski
315 Broadway, Suite 200
New York, NY 10007
(212) 285-9300
(3326)